IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **SHERRY WATSON** )<br>)<br>**Plaintiff,** )<br>)<br>v. )<br>)<br>**J.C. PENNEY CORPORATION, INC.** )<br>)<br>**Defendant.** )<br>) | Civil Action No. WGC-15-469 |

## MEMORANDUM OPINION

Plaintiff Sherry Watson ("Plaintiff" or "Mrs. Watson") brought this action against Defendant J. C. Penney Corporation, Inc. ("Defendant" or "J. C. Penney") alleging negligence and seeking $250,000 in damages. The parties consented to proceed before a United States Magistrate Judge for all further proceedings in the case and the entry of a final judgment. *See* ECF No. 10. The case thereafter was referred to the undersigned. *See* ECF No. 12. Pending before the court and ready for resolution is J.C. Penney's Motion for Summary Judgment (ECF No. 16). Mrs. Watson filed an Opposition (ECF No. 20) and J. C. Penney filed a Reply (ECF No. 21).

J.C. Penney requests an oral hearing. *See* ECF No. 16 at 2. No hearing is deemed necessary and therefore the request for oral hearing is **DENIED**. The court now rules pursuant to Local Rule 105.6 (D. Md. 2014).

## BACKGROUND[1]

On December 14, 2013 Mrs. Watson and her husband visited the J. C. Penney store located at 11130 Mall Circle, Waldorf, Maryland 20603. She fell shortly after her arrival.

> A.  It was on a Saturday. Early, I would say early, afternoon. And my husband and myself came into the front entrance of the store in Charles Towne, and we were walking. You come into the door, there is a register right in the middle. And we came in, walked – – we went to the right.
>
> Q.  Okay.
>
> A.  And as we were walking – – I was in front of my husband. And we're walking, and the next thing I know the foot went one way, the rest of my body went the other. It was like my ankle went one way, my knee turned in. So actually landed – –
>
> Q.  Right knee?
>
> A.  Um-um. I actually landed on the inside part of the knee. Once I fell, the rear end caught everything else.

ECF No. 16-2 at 2 (S. Watson Dep. 19:2-17). According to Mr. Watson, he was in the store for about 30 seconds before his wife fell. ECF No. 16-2 at 5 (E. Watson Dep. 16:7-9). He did not see her fall. "I turned away, looked back, she was on the floor." *Id.* (E. Watson Dep. 14:21 - 15:1).

Weather was not a factor. According to Mrs. Watson the weather was pretty nice; it was sunny. She does not recall any precipitation. The streets and sidewalks were dry. ECF No. 16-2 at 2 (S. Watson Dep. 20:1-7). At the time of her fall, Mrs. Watson wore ankle boots.

## JURISDICTION AND VENUE

Subject matter jurisdiction is based on diversity of citizenship pursuant to 28 U.S.C. § 1332. Mrs. Watson is a resident of Maryland. J. C. Penney is incorporated in Delaware and its

---

[1] In determining whether the moving party has shown there are no genuine issues of any material fact, this court must assess the factual evidence and all inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 438 (4th Cir. 1998).

principal place of business is in Plano, Texas. The amount in controversy exceeds $75,000, exclusive of interest and costs. Pursuant to 28 U.S.C. § 1391 venue is proper in this district because a substantial part of the events or omissions giving rise to the claim occurred in this district.

## STANDARD OF REVIEW

A motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir. 1979); *Stevens v. Howard D. Johnson Co.*, 181 F.2d 390, 394 (4th Cir. 1950). The moving party bears the burden of showing that there is no genuine issue as to any material fact. Fed. R. Civ. P. 56(a); *Pulliam Inv. Co.*, 810 F.2d at 1286 (citing *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979)).

When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Gill v. Rollins Protective Servs. Co.*, 773 F.2d 592, 595 (4th Cir. 1985). A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. "[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 323.

On those issues where the nonmoving party will have the burden of proof, it is that party's responsibility to confront the motion for summary judgment with an affidavit or other similar evidence. *Anderson*, 477 U.S. at 256. However, "'[a] mere scintilla of evidence is not enough to create a fact issue.'" *Barwick v. Celotex Corp.*, 736 F.2d 946, 958-59 (4th Cir. 1984) (quoting *Seago v. North Carolina Theaters, Inc.*, 42 F.R.D. 627, 632 (E.D.N.C. 1966), *aff'd*, 388 F.2d 987 (4th Cir. 1967), *cert. denied*, 390 U.S. 959 (1968)). There must be "sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

## DISCUSSION

*A. Overview – Premises Liability*

Before addressing the parties' positions regarding genuine issues as to any material fact, the court must address some preliminary matters. Since this court's jurisdiction is based on diversity of citizenship, the principles outlined in *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 78 (1938) require the application of Maryland law to substantive law questions. Under Maryland law a property owner owes a certain duty to an individual who comes in contact with the property, and the scope of the duty owed is dependent upon the individual's status while on the property. *Baltimore Gas & Elec. Co. v. Flippo*, 348 Md. 680, 688, 705 A.2d 1144, 1148 (1998). Maryland law recognizes four categories of individuals: (1) an invitee, (2) a licensee by invitation, (3) a bare licensee and (4) a trespasser. An invitee is an individual who is on the property for a purpose related to the landowner's business. "An occupier of land has a duty to use reasonable and ordinary care to keep the premises safe for an invitee and to protect him from injury caused by an unreasonable risk that the invitee, by exercising ordinary care for his own

4

safety, will not discover." *Henley v. Prince George's County*, 305 Md. 320, 339, 503 A.2d 1333, 1343 (1986).

A licensee by invitation is a social guest and the landowner "owes a duty to exercise reasonable care to warn the guest of dangerous conditions that are known to the [landowner] but not easily discoverable." *Flippo*, 348 Md. at 689, 705 A.2d at 1148 (citation omitted). For a bare licensee, a person on the property with permission but for his/her own purposes, a landowner only owes a duty to refrain from willfully or wantonly injuring the bare licensee and to refrain from creating "'new and undisclosed sources of danger without warning the [bare] licensee.'" *Id.* (citation omitted). For a trespasser, someone who intentionally and without permission enters another's property, a landowner owes no duty except refraining from willfully or wantonly injuring or entrapping the trespasser.

On December 14, 2013 Mrs. Watson was a customer at a J. C. Penney store in Waldorf, Maryland. She was in the store for a purpose related to J. C. Penney's business. Mrs. Watson was thus an invitee.

B.  *Negligence*

Under Maryland law, to establish a *prima facie* case of negligence, Mrs. Watson must prove "'(1) that the defendant was under a duty to protect the plaintiff from injury, (2) that the defendant breached that duty, (3) that the plaintiff suffered actual injury or loss, and (4) that the loss or injury proximately resulted from the defendant's breach of the duty.'" *Valentine v. On Target*, 353 Md. 544, 549, 727 A.2d 947, 949 (1999) (citations omitted). Negligence means doing something a person using reasonable care would not do, or not doing something a person using reasonable care would do. *Maryland Civil Pattern Jury Instruction* 19:1. Ordinary or

reasonable care means "that caution, attention or skill a reasonable person would use under similar circumstances." *Id.*

J. C. Penney owes a duty of ordinary care to keep its premises safe for an invitee such as Mrs. Watson. That duty is defined as follows:

> [A]n owner or occupier of land only has a duty to exercise reasonable care to "protect the invitee from injury caused by an unreasonable risk" that the invitee would be unlikely to perceive in the exercise of ordinary care for his or her own safety, and about which the owner knows or could have discovered in the exercise of reasonable care. The duties of a business invitor thus include the obligation to warn invitees of known hidden dangers, a duty to inspect, and a duty to take reasonable precautions against foreseeable dangers.

*Tennant v. Shoppers Food Warehouse Md. Corp.*, 115 Md. App. 381, 388, 693 A.2d 370, 374 (1997) (internal citations omitted).

J. C. Penney however is not an insurer of Mrs. Watson's safety while she is on its premises. "[N]o presumption of negligence on the part of the owner arises merely from a showing that an injury was sustained in his store." *v. Greenbelt Consumer Servs., Inc.*, 239 Md. 229, 232, 210 A.2d 724, 725 (1965). Therefore, "[i]n an action by a customer to recover damages resulting from a fall in a store caused by a foreign substance on the floor or stairway, the burden is on the customer to produce evidence that the storekeeper created the dangerous condition or had actual or constructive knowledge of its existence." *Rawls v. Hochschild, Kohn & Co.*, 207 Md. 113, 119, 113 A.2d 405, 408 (1955).

C.  *Actual Knowledge*

As the party asserting negligence, Mrs. Watson has the burden of proving J. C. Penney knew the floor was hazardous.

> Q. Did anybody – – after the fall, did anybody ever say to you, "I saw that [film or residue] on the floor beforehand?"

> A. No.
>
> Q. Okay.
>
> Nobody ever said they knew where it came from?
>
> A. No.
>
> Q. And nobody ever said they knew how it got there?
>
> A. No.
>
> Q. And nobody ever told you that they knew how long it was there?
>
> A. No.
>
> Q. Did you see it on the floor before you fell?
>
> A. No.
>
> Q. You said you saw it after you fell?
>
> A. Yes.

ECF No. 16-2 at 3 (S. Watson Dep. 22:5-21).

In support of her Opposition to J. C. Penney's motion for summary judgment, Mrs. Watson signed a declaration stating in pertinent part,

> 3. As I was walking through the main lobby area, near the check-out registers, I slipped and fell, injuring myself.
>
> 4. After I recovered, I noticed that a film of the slippery soapy residue covering the entire floor area near which she [sic] fell. This residue was the cause of my fall. The area where I fell is located directly in front of the check-out registers.
>
> 5. There were multiple trails of footprints through this residue. There were no warning signs on the floor.

ECF No. 20-1 at 2 (S. Watson Decl.). Mr. Watson's declaration is virtually identical.

7

3. As we were walking through the main lobby area, near the check-out registers, my wife slipped and fell.

4. After I helped her to get up, I observed that a film of the slippery soapy residue covering the floor where she fell, as well as the nearby areas. The substance had a strong odor of a cleaning product.

5. There were multiple trails of footprints through the residue. There were no warning signs on the floor.

ECF No. 20-3 at 2 (E. Watson Decl.).

The declarations suggest J. C. Penney had actual knowledge since there were multiple footprints through the residue. However, both Mrs. Watson and Mr. Watson testified neither the residue nor the footprints were readily apparent.

> Q. Did you have anything in your hands when you fell?
>
> A. No. There was a lot of film residue all on the floor. You could see other footprints from other customers. I guess, customers and employees. You could see a whole bunch of trails of footprints. Like a film or residue.
>
> Q. Do you know what that film or residue was?
>
> A. No.
>
> Q. Do you know where it came from?
>
> A. No.
>
> \* \* \*
>
> Q. Was it readily visible? Was it easy to see?
>
> A. You could see other people's footsteps, footprints or shoe prints, but you have to – – it's like if you look, if you're not looking for it, you won't see all the stuff. But after I fell, me and my husband both, we were like looking, you know, with a tilt of our head you could actually see. Leaning with our heads tilted, you could actually see the residue film on the floor.

> Q. You said that you had – – in order to see it, you said you and your husband had a tilt to your head, meaning look at the floor at an angle?
>
> A. An an [sic] angle, yes.

ECF No. 16-2 at 3 (S. Watson Dep. 21:3-13, 23:1-13).

> Q. Do you know what caused her to fall?
>
> A. I believe the floor being slippery.
>
> Q. Do you know what, if anything, was on the floor which caused it to be slippery?
>
> A. Well, at first, you couldn't notice anything. But after the fact, it appeared to be something that they had cleaned the floor with that had dried up and left a film.
>
> Q. You didn't see anybody cleaning the floor; correct?
>
> A. No.
>
> \*        \*        \*
>
> Q. Did you see any mops out anywhere?
>
> A. No, I didn't.
>
> Q. Did you see any buckets out anywhere?
>
> A. No, I didn't.
>
> Q Did you see any employees cleaning the floor at all at any time you were in the store that day?
>
> A. No.

*Id.* at 5, 6 (E. Watson Dep. 15:6-16, 19:2-9).

Neither Mrs. Watson's deposition testimony nor the declarations prove J. C. Penney knew the floor was hazardous. No other evidence has been presented that J. C. Penney was

actually aware of film or residue on the floor prior to Mrs. Watson's fall. Mrs. Watson fails to meet her burden and therefore cannot demonstrate actual knowledge by J. C. Penney.

D.  *Constructive Knowledge*

One of the preeminent cases of a store owner's negligence based on constructive knowledge is *Moore v. American Stores Co.*, 169 Md. 541, 182 A. 436 (1936). The appellant, Anna Moore, visited appellee's store to purchase some items. In the process of departing the store, while passing the meat counter, both of her feet slipped, causing her to drop. Ms. Moore attempted to catch herself or brace herself with her hands. She was unable to get up on her own and had to be assisted. "When she got up, she noticed dirty grimy grease on her hands, and that the floor where she fell was dark and 'more greasy that the rest of the floor.'" 169 Md. at 544, 182 A. at 437. The Court of Appeals of Maryland found the facts of this case sufficient to impute to the store operator constructive knowledge of the greasy condition of the floor.

> There is evidence, apart from the grease found on appellant's shoe, that the floor was greasy, that both of her feet "went from under her," and that there was grease on her hands and on her dress which were on the floor, and that the floor looked greasy. The greasy condition of the floor may undoubtedly have been caused by just such pieces of grease or bacon as that found on appellant's shoe, and it tended for that reason to corroborate her statement that the floor was greasy. It may also have been inferred that such pieces of grease fell from the meat block or the counter which were immediately adjacent to the place where she fell. The fact that her hands where they rested on the floor were greasy tended to show that there was more grease on the floor than that found on her shoe, for in falling her hands could not well have come in contact with the sole of one shoe, especially as her feet slid in the direction she was going, and in falling she sat down.

169 Md. at 548-49, 182 A. at 439.

Critical for imputing constructive knowledge is a plaintiff demonstrating the dangerous condition existed for a sufficient period of time to permit the store operator, exercising

10

reasonable care, to discover it. The store operator's failure to discover the dangerous condition "may in itself be evidence of negligence sufficient to charge him with knowledge of [the dangerous condition]." 169 Md. at 551, 182 A. at 440. Finally, after reviewing a series of cases where business operators were found liable, the Court of Appeals of Maryland observed such findings are "consistent with the hypothesis that the dangerous condition was created by some act or default on the part of the defendant or its agent, or was in some way incidental to the operation of its business." 169 Md. at 552, 182 A. at 441.

Returning to the lawsuit before this court, Mrs. Watson claims constructive knowledge can be inferred based on the length of time the hazardous condition existed. She asserts there is evidence the slippery residue was on the floor for a long time. Second, Mrs. Watson notes she fell in an area near the check-out register and therefore she was in direct line of sight of the cashiers. Moreover, according to Mrs. Watson, the slippery residue covered a substantial area. "Thus, Defendant's employees should have been able, in the exercise of the ordinary care, to discover the slippery substance prior to Mrs. Watson's fall." ECF No. 20 at 5-6.

Regarding "time on the floor" evidence, Mrs. Watson relies upon the following testimony of Debra Addison, store manager.

> Q. And who cleans the store?
>
> A. It would be an outside maintenance.
>
> Q. And what times do they clean the store?
>
> A. They come to the store three hours before store opening.
>
> Q. And what time is that?
>
> A. If we opened at 9:00 that morning, they would have had to have been in at 6:00 a.m.
>
> Q. And what cleaning do they do to the floors?

11

> A. I really don't know what they do to the floors. I just know that they clean.

ECF No. 21-1 at 4 (Addison Dep. 7:9-20). According to Mrs. Watson she fell shortly after arriving at the store at approximately 12:50 p.m., almost *seven hours* after the floors were cleaned.

During her deposition Mrs. Watson did not have any information concerning the length of time the slippery film or residue had been on the floor.

> Q. Do you know how long it was on the floor?
>
> A. No. It wasn't just that area. The floor was covered.
>
> Q. But the area that you fell in, do you know where that – – whatever the foreign substance on the floor was, do you know where it came from?
>
> A. No.
>
> Q. You don't know how it got on the floor?
>
> A. No.
>
> Q. Did anybody ever tell you that they saw it on the floor before you fell?
>
> A. I'm sorry?
>
> Q. Did anybody – – after the fall, did anybody ever say to you, "I saw that on the floor beforehand?"
>
> A. No.
>
> Q. Okay.
>
>    Nobody ever said they knew where it came from?
>
> A. No.
>
> Q. And nobody ever said they knew how it got there?

> A. No.
>
> Q. And nobody ever told you that they knew how long it was there?
>
> A. No.

ECF No. 16-2 at 3 (S. Watson Dep. 21:14 - 22:17).

Store Manager Debra Addison responded to the scene where Mrs. Watson fell.

> Q. And did the customer explain to you why she fell or how she fell?
>
> A. She said she slipped on the floor.
>
> Q. Did you inspect the area where she slipped?
>
> A. Yes, sir.
>
> Q. And what did you find out?
>
> A. I did not see anything on the floor.
>
> Q. Was the floor – – floor dry?
>
> A. Yes.
>
> Q. Did you – – did you or to the best of your knowledge anybody at the store receive any complaints about wet floor that day?
>
> A. No, sir.

ECF No. 21-1 at 6 (Addison Dep. 10:8-21). The fact that Ms. Addison did not see anything on the floor is not surprising. Mrs. Watson and Mr. Watson testified that the film or residue was not readily visible. They only perceived the residue upon tilting their heads or looking at an angle.

Mrs. Watson further contends J. C. Penney had constructive knowledge of the slippery floors based on multiple footprints; however, as Mrs. and Mr. Watson acknowledge, the residue and footprints were not readily apparent.

13

Additionally Mrs. Watson suggests J. C. Penney had constructive knowledge because she fell near the check-out registers within the direct line of sight of J. C. Penney's cashiers. Mrs. Watson however has not presented any testimony or other evidence suggesting any cashier noticed the supposedly slippery floor or saw Mrs. Watson fall. *See Maans v. Giant of Maryland, L.L.C.*, 161 Md. App. 620, 631, 871 A.2d 627, 634 (2005) ("appellant produced not one scintilla of evidence to show that if any of the cash-register operators had looked they would have seen the water."). Mrs. Watson has not presented evidence comparable to that presented in *Keene v. Arlan's Dept. Store*.

> Some fifteen minutes later, during which time her husband had been moving forward in the check-out line, Mrs. Keene decided to join him and started to walk in his direction. Suddenly, her feet slipped out from under her and she 'was sitting on (her) bottom on the floor.' She testified that an unidentified man in the first check-out line attempted to help her up and when she had almost gotten to her feet she slipped again, falling in such a way as to be facing the front of the store (as well as the cashier in the first line); that as she was regaining her feet for the second time she heard the cashier in the first check-out line blurt out, 'I told them if this wasn't cleaned up, someone's' going to fall.'

35 Md. App. 250, 251-52, 370 A.2d 124, 125-26 (1977). Mrs. Watson's fall occurred on December 14, 2013 during the height of the Christmas holiday shopping season. It would not be surprising if the cashiers were busy with customers making purchases and therefore the cashiers may not have had the opportunity to observe the condition of the floor.

Finally, under the constructive notice analysis, Mrs. Watson has not presented any evidence that J. C. Penney would have detected the slippery film or residue on the floor in sufficient time to prevent her fall. The facts of this case are distinguishable from *Mack-Epps v. Supervalu, Inc.*, Civ. No. WMN-11-530, 2011 U.S. Dist. LEXIS 120198 (D. Md. Oct. 18, 2011)

where an employee had called for a cleanup of the produce area twenty minutes before the plaintiff slipped on a mashed grape. Once again, this court finds the *Maans* case instructive.

> [I]n regard to the issue of what the cash-register operator would have seen if she had looked, there was no evidence produced as to how much water was on the floor to be seen, nor was there evidence that a cashier, if he or she had looked, could have seen the transparent liquid.

*Maans*, 161 Md. App. at 632, 871 A.2d at 634 (footnote omitted). Both Mrs. Watson and Mr. Watson testified the film or residue on the floor was *not* readily apparent. In this case no evidence has been presented of any J. C. Penney employee being aware of the slippery film or residue on the floor *before* Mrs. Watson fell. Mrs. Watson fails to meet her burden and therefore cannot demonstrate constructive knowledge by J. C. Penney.

*E.     Created the Dangerous Condition*

Mrs. Watson argues she does not have the burden of proving J. C. Penney had notice where the dangerous condition was created by J. C. Penney, citing the *Keene* case as authority. Mrs. Watson claims the slippery film or residue was a cleaning product. She contends the slippery film or residue covering the floor could not have possibly been created by innumerable causes other than J. C. Penney or its employees and/or contractors. "A logical and natural inference that [a] jury can reach is that Defendant, through its employees and/or contractors, cleaned the floor but failed to remove all of the cleaning product, leaving it slippery." ECF No. 20 at 4.

In an action by a customer to recover damages resulting from a fall in a store caused by a foreign substance on the floor or stairway, the burden is on the customer to produce evidence that the storekeeper created the dangerous condition. . . ." *Rawls*, 207 Md. at 119, 113 A.2d at 408. The facts of this case are distinguishable from *Montgomery Ward & Co. v. Hairston*, 196

15

Md. 595, 78 A.2d 190 (1951) where Ms. Hairston fell and broke her leg while shopping at a Montgomery Ward store. Ms. Hairston noticed a "spot about as large as a dinner plate covered with an 'oily, greenish, grayish substance', in which her left heel had left a mark." 196 Md. at 597, 78 A.2d at 190. The Court of Appeals reversed judgment in favor of Ms. Hairston because "there was nothing to charge the defendant with notice of the spot." *Id.* at 599, 78 A.2d at 191. *Hariston* and *Maans* cases concern foreign objects being dropped on the floor and whether store employees had notice of the foreign object. As Judge Davis observed in *Sinnott v. Wal-Mart Stores*, "Maryland case law generally encompasses two basic categories of constructive notice in slip and fall cases: (1) slip and falls on 'foreign substances;' and (2) slip and falls on conditions created directly by the store owner." Civ. No. AMD 99-2494, 2000 U.S. Dist. LEXIS 23305, at *6 (D. Md. July 14, 2000). This case falls squarely into the latter category of slip and fall cases since Mrs. Watson and Mr. Watson testified the slippery film or residue *covered the entire floor*. A residue covering the *entire floor*, and not just a spot of residue or residue in a small section of the floor room, suggests "the dangerous condition was created by some act or default on the part of the defendant or its agent, or was in some way incidental to the operation of its business." *Moore*, 169 Md. at 552, 182 A. at 441. Maintenance of the floor is incidental to J. C. Penney's operation of its stores.

> The notice issue is somewhat less frequently litigated in cases involving injury from falls on waxed, oiled, or similarly treated floors, than in cases involving injury from falls due to other floor conditions. Normally, it is the proprietor of the business operated on the premises who is responsible for such treatment of the floors therein, and some courts have taken the view that it is necessarily true that he has knowledge of their condition.

R. D. Hursh, *Liability of proprietor of store, office, or similar business premises for fall on floor made slippery by waxing oiling*, 63 A.L.R. 2d 591 [§7[a]] (1959).

The Maryland courts have addressed this issue in a case with facts similar to this present litigation. In that case Mrs. Link entered a department store and noticed the shiny condition of its vinyl floor. When she stepped into area that appeared more shiny than the rest of the floor, her left foot suddenly slipped. Mrs. Link sued the department store. After the presentation of evidence the trial judge granted the department store's motion for judgment notwithstanding the verdict. The Court of Special Appeals of Maryland disagreed with the trial judge as explained below.

> In the case now before us the trial judge concluded that because the "mound" on which the appellant slipped was translucent and could only be seen by a hands and knees inspection, it would be "totally unreasonable" to hold the appellee responsible. Appellant's testimony, however, if believed, supports a rational inference that appellee or its employees negligently applied the translucent substance to the floor. The jury could find from the evidence that appellee actually created the dangerous condition as a result of its negligent application of the floor surfacing material. "[T]he fact that a condition of a floor was made dangerous by the act of an employee without the knowledge of the owner of the premises . . . does not relieve the storekeeper of liability if such waxing or oiling was done in a negligent manner." 62 Am. Jr. 2d Premises Liability § 222 (1972).

*Link v. Hutzler Bros. Co.*, 25 Md. App. 586, 594, 335 A.2d 192, 197 (1974), *pet. denied*, 275 Md. 750 (1975).

The testimonies of Mrs. Watson and her husband are legally sufficient for this case to be presented to a jury. The jury may disbelieve the Watsons and believe store manager Ms. Addison or *vice versa*. It is not the province of this court to resolve discrepancies by weighing evidence or assessing credibility. These matters are for a jury to resolve.

## CONCLUSION

For the foregoing reasons, the court finds there are genuine issues as to a material fact and thus J. C. Penney is not entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a). An Order will be entered separately denying J. C. Penney's motion for summary judgment.

<u>November 30, 2015</u>                         <u>              /s/                     </u>
      Date                                          WILLIAM CONNELLY
                                                UNITED STATES MAGISTRATE JUDGE